Lieutenant Colonel Raymond
SAUNDERS Plaintiff,

v.

Louis CALDERA, Secretary of
the Army, Defendant.

No. CIV.A.99–2807 (RCL).

United States District Court,
District of Columbia.

March 19, 2001.

See also 2002 WL 338744.

Christopher Alexander Sterbenz, Vienna, VA, for Plaintiff.

Vincent Morgan Garvey, Peter Baker Robbins, David Michael Glass, U.S. Department of Justice, Civil Division, Washington, DC, for Defendant.

## *MEMORANDUM OPINION*

LAMBERTH, District Judge.

Now before the Court is the defendant's motion to dismiss the plaintiff's complaint. The plaintiff, a white male, alleges that he was several times denied a promotion by the defendant's affirmative action policies. He also alleges that he is prevented from seeking a correction of his military records with the Army Board for the Correction of Military Records. After a full consideration of the plaintiff's claims, the parties' memoranda, the applicable law, and for the following reasons, the Court GRANTS in part and DENIES in part the defendant's motion.

## *BACKGROUND*

Lieutenant Colonel Raymond Saunders is a white male who served in the Army from 1974 to 1997.[1] Although originally commissioned as a Second Lieutenant in the Regular Army, he transferred to the Judge Advocate General's Corps in 1981 after graduating from law school. In 1992, he was promoted to the rank of Lieutenant Colonel and, in 1996 and 1997, he sought a promotion to Colonel. Both times, he was denied a promotion.

The Army promotes its lieutenant colonels to the rank of colonel through the use of a "selection board." *See* 10 U.S.C.

---

1. Although a statement of the plaintiff's race is crucial in any claim of racial discrimination, the plaintiff fails to state his race in the complaint. For his part, the defendant fails to address this omission in his motion to dismiss. In light of the fact that it is clear from the parties' memoranda that the plaintiff is white, and the fact that an amendment clarifying this would be granted almost as a matter of course, the Court declines to hinge its decision on this particular pleading defect.

§ 611(a). Each year, this board reviews the experience and qualifications of several hundred officers seeking a promotion. They select the top candidates from the applicant pool and recommend them to the Secretary of the Army and ultimately the President for promotion to the positions available. *See* 10 U.S.C. § 612(a), 618. Although the President and the Secretary of the Army have the ultimate control over promotion decisions, it is understood by all involved that most, if not all, of the evaluative decisions are made by the selection board.

The selection board's evaluation process is controlled by a memorandum of instruction ("MOI"). This document, which is issued by the Secretary of the Army, provides mandatory guidance to the selection board on issues such as the number of promotions and equal opportunity goals. In LTC Saunders' case, the MOI issued to the selection boards considering his promotion contained the following instructions:

> *Goals.* Equal Opportunity. Your goal is to achieve a selection rate in each minority or gender group (minority groups: Black, Hispanic, Asian/Pacific Islander, American Indian, and Other/Unknown; gender group: Female) that is not less than the selection rate for all officers in the primary zone of consideration. You are required to conduct a review of files for the effects of past discrimination in *any case* in which the selection rate for a minority or gender group is less than the selection rate for all first time considered officers. This review is required even if the selection of one individual in a minority or gender group would result in a selection rate equal to or greater than the equal opportunity goal for the minority gender group. For the pur-

poses of this board, the foregoing guidance as to when an equal opportunity review is required takes precedence over the general guidance contained in DA Memorandum 600–2, para A–10c(3), first sentence. You will refer to the remainder of DA Memorandum 600–2, para A–10c (3), for a description of the procedures to use for this review, as well as instructions concerning required revoting procedures where past discrimination is discovered. My commitment is to build a diverse Judge Advocate General's Corp that is consistent with the diverse structure of the rest of the Army.

Memorandum from Togo D. West to James N. Hatten, July 24, 1996, at 2–3.

Although the MOI is clear in certain respects, its reference to the "revoting procedures" is not clear on its face and the plaintiff has not elucidated its meaning in his complaint. Nonetheless, as the revote procedure is a central issue in this case, and the government has conceded the existence of the process during the applicable times, the Court adopts, and describes below, the process as explained by the defendant.[2]

As its name suggests, the revote procedure occurs after the selection board has "completed a review of [the officers'] personnel files and initially ranked [them] in order of qualification for promotion." Brief for Defendant, Mar. 31, 2000, at 2 (quoting *Sirmans v. Caldera*, 27 F.Supp.2d 248, 249 (D.D.C.1998) (Lamberth, J.)). After this ranking, and in accordance with the MOI, the selection board reviews the results to determine whether promoting the leading candidates from the first ranking would "produce a selection rate for minorities and women that was comparable to the selection rate for all officers

---

**2.** The Court notes that the terms of the revote process are not disputed and have been described several times in other cases. *See, e.g.,* *Sirmans v. Caldera,* 27 F.Supp.2d 248, 249 (D.D.C.1998) (Lamberth, J.).

considered for promotion." Brief for Defendant, Mar. 31, 2000, at 2. If promotions made in accordance with the initial ranking would not produce comparable promotion rates, the board was then obliged to reexamine the records of all female and minority candidates who were qualified for promotion yet unable to receive one on account of their ranking. The reexamination was "to determine if any of the personnel files show[ed] evidence of discrimination against the individual officer." *Id.* If a majority of the selection board found "evidence of past discrimination, that officer was 'revoted' and assigned a new qualification ranking." *Id.* This new ranking might be higher or lower than the candidate's first ranking and might not result in the candidate being ranked high enough for a promotion. In any event, the ranking ascribed to the female or minority applicant was final after the revote took place.

Two selection boards, the 1996 Board and the 1997 Board, considered Lieutenant Colonel Saunders's application for a promotion. Although both selection boards followed the above "review and revote" procedure, the specific circumstances of each case demanded different actions. Specifically, the 1996 Selection Board determined that its initial ranking failed to achieve the desired promotion rate for American Indians and therefore conducted a review of the American Indian files for evidence of past discrimination. Finding no such discrimination, the 1996 Board did not revote on any candidate and recommended the promotion of the highest ranking applicants.

In 1997, the Board determined that its initial ranking failed to achieve the desired promotion rate for female applicants. The Board therefore reviewed the files of female applicants for evidence of past discrimination. Finding evidence of past discrimination in one case, the Board revoted on that applicant.

Lieutenant Colonel Sanders alleges that Army's equal opportunity policy "as set forth in writing and as actually interpreted and executed by the . . . promotion boards," denied him his constitutional rights. Complaint for Saunders, Oct. 25, 1999, at 7. He also makes the ancillary claim that the Army Board for the Correction of Military Records ("ABCMR") is acting arbitrarily and capriciously by not correcting his military record to reflect the position of Colonel. According to statute, such corrections are permissible if they are "necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a).

## *ANALYSIS*

### I.   Jurisdiction

Because the plaintiff's well-pleaded complaint presents a federal question, this Court properly has jurisdiction to consider the defendant's motion. *See* 28 U.S.C. § 1331.

### II.   Standard of Review

If a plaintiff has failed "to state a claim upon which relief can be granted," a court may grant a defendant's motion to dismiss. Fed.R.Civ.P. 12(b)(6); *see also Hishon v. King Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1114 (D.C.Cir.2000). In evaluating a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and give the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Schuler v. United States,* 617 F.2d 605, 608 (D.C.Cir.1979); *see also Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). "However, legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness." *Wiggins v. Hitchens,* 853 F.Supp. 505, 508 n. 1 (D.D.C.1994) (citing 2A Moore's Federal Practice, § 12.07, at 63 (2d ed.1986)

(footnote omitted); *Haynesworth v. Miller*, 820 F.2d 1245, 1254 (D.C.Cir.1987)).

### III. The Plaintiff's Claim Based on the Army's Equal Opportunity Policy

■ The plaintiff alleges that he was denied a promotion in 1996 and 1997 as a result of the Army's equal opportunity policy, otherwise known as the "review and revote" policy. This policy, he alleges, is unconstitutional. The Court finds that his complaint states a claim for which relief can be granted and therefore denies the defendant's motion to dismiss.

It is axiomatic in the era of notice pleading that a plaintiff need only provide "a short, plain statement of the claim" such that "the defendant [will have] fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, (D.C.Cir.2000) (quoting Fed.R.Civ.P. 8(a)); *see also Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Thus, a complaint "need not plead law or match facts to every element of a legal theory." *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C.Cir.2000) (quoting *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir.1998)); *see also Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1086 (D.C.Cir.1998) ("[A] plaintiff need not allege all the facts necessary to prove its claim."); *Atchinson v. District of Columbia*, 73 F.3d 418, 421–22 (D.C.Cir.1996) ("A complaint ... need not allege all that a plaintiff must eventually prove."). As Judge Easterbrook put it in the employment discrimination context:

> Because racial discrimination in employment is 'a claim upon which relief can be granted,' .... 'I was turned down for a job because of my race' is all a complaint has to say to survive a motion to dismiss under Rule 12(b)(6).

*Sparrow*, 216 F.3d at 1114 (quoting *Bennett*, 153 F.3d at 518).

The Court finds that the plaintiff has met this minimal threshold. Racial and gender discrimination in promotion are, of course, claims "upon which relief can be granted," and the plaintiff's statement that the defendant's racial and gender preferences denied him a promotion thus squarely states a claim.[3]

### IV. The Plaintiff's Claim for an Injunction Enjoining the Army from Practicing its "Review and Revote" Policy

■ Although the Court finds that the plaintiff properly states a claim, the Court nonetheless finds that the plaintiff lacks standing to seek a prospective injunction.

---

**3.** The defendant argues that the plaintiff's discrimination claims are mooted by the relief it has tendered. Determining that "it would not be cost-efficient to litigate" this matter, the defendant has convened a special selection board to reconsider the plaintiff's promotion without utilizing a "review and revote" practice. Brief for Defendant, Mar. 31, 2000, at 7. The second evaluation for promotion, the defendant argues, effectively moots the plaintiff's claim because this is the relief he is seeking. *See* Complaint for Saunders, Mar. 25, 1999, at 9. The Court disagrees.

First, the relief offered does not comprise the total relief sought by the plaintiff. The plaintiff specifically seeks the removal of any non-selection evidence from his military records. The statute addressing the special selection board does not provide for this relief. *See* 10 U.S.C. § 628. Second, and more persuasively, the plaintiff takes issue with the equal opportunity policy that the special selection board will use in its re-evaluation of the plaintiff's application. While the Court would not accept a plaintiff's spurious assertion that an offered settlement is unsatisfactory, the plaintiff's dissatisfaction with the tendered relief in this case is far from spurious. The revised equal opportunity instructions, in their recognition that race and gender should be acknowledged in the evaluation process, present a colorable constitutional claim. The Court therefore finds that the defendant's tendered relief does not moot this case.

Accordingly, the claim for this relief must be dismissed.

To have standing, a plaintiff must show: (1) injury in fact, by which we mean an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal relationship between the injury and the challenged conduct, by which we mean the injury fairly can be traced to the challenged action of the defendant and has not resulted from the independent action of some third party not before the court; . . . and (3) a likelihood that the injury will be redressed by a favorable decision.

*Northeastern Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 663, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993) (citations and internal quotation marks omitted) (analyzing a plaintiff's standing in an equal protection challenge to an affirmative action program); *see also Friends of the Earth, Inc. v. Laidlaw Environmental Servs.*, 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000).

The third factor, the likelihood of redress, takes on a slightly varied form when a party is seeking prospective relief. As the Supreme Court has stated, "[i]n a lawsuit brought to force compliance, it is the plaintiff's burden to establish standing by demonstrating that, if unchecked by the litigation, the defendant's allegedly wrongful behavior will likely occur or continue, and that the 'threatened injury is certainly impending.'" *Friends of the Earth*, 528 U.S. at 190, 120 S.Ct. 693 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158, 110

S.Ct. 1717, 109 L.Ed.2d 135 (1990)). Thus, in *Los Angeles v. Lyons*, 461 U.S. 95, 105–110, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), the Supreme Court held that a plaintiff lacked standing to seek an injunction against a policy sanctioning police chokeholds because he could not "credibly allege that he faced a realistic threat arising from the policy." *Friends of the Earth*, 528 U.S. at 190, 120 S.Ct. 693 (summarizing the holding in *Lyons* ).

Against this backdrop of precedent, it is clear that the plaintiff lacks standing to pursue the prospective relief he has sought. The facts are clear that the plaintiff retired from active duty on October 31, 1997. Because he is therefore no longer subject to the Army's promotion policies, there is no possibility that a "threatened injury is certainly impending." If the Army were to re-institute the disputed policy at some point, the plaintiff would not be harmed in any way outside of his "ideological interest," a harm that has long been recognized as insufficient for standing. *Albuquerque Indian Rights v. Lujan*, 930 F.2d 49, 55 (D.C.Cir.1991). Thus, the plaintiff's claim for forward-looking relief must be dismissed under Federal Rule of Civil Procedure 12(b)(1) because he lacks standing sufficient for this Court to have jurisdiction over his claim.

### CONCLUSION

To summarize today's holding, the Court finds that the plaintiff has stated a claim upon which relief can be granted, except with regard to his claim for prospective injunctive relief. As the parties have not addressed the plaintiff's claim with respect to the ABCMR,[4] the Court expresses no

---

4. The plaintiff claims that the defendant acts arbitrarily and capriciously when he denies various officers' requests for their records to corrected because of an "error" or an "injustice." 10 U.S.C. § 1552(a). The error or injustice, they allege, is the Army's denial of

their promotion and concurrent use of the "review and revote" policy. The plaintiff claims that, because of the ABCMR's repeated denials of these requests, the defendant would be engaged in a "futile exercise" if he were to seek correction himself. Complaint for Saun-

opinion on the claim. That claim therefore remains. An order consistent with this Memorandum Opinion will issue this date.

ders, Oct. 25, 1999, at 8. Thus, he alleges, he may "seek review of his non-selection for promotion directly by this Honorable Court." *Id.* at 9.